Colleen A. SHEFFERLY,
Plaintiff–Appellant,

v.

HEALTH ALLIANCE PLAN OF
MICHIGAN, Defendant–
Appellee.

No. 02–2488.

United States Court of Appeals,
Sixth Circuit.

April 5, 2004.

Before NELSON, MOORE, and FRIEDMAN,* Circuit Judges.

**OPINION**

MOORE, Circuit Judge.

Plaintiff–Appellant, Collen A. Shefferly ("Shefferly"), appeals the district court's grant of summary judgment to her former employer Defendant–Appellee, Health Alliance Plan of Michigan ("Health Alliance"), on Shefferly's claims arising out of her employment and termination. On appeal, Shefferly argues that the district court erred by concluding that Health Alliance did not discriminate against her on the basis of gender. Shefferly also argues on appeal that the district court erred by concluding that Health Alliance did not retaliate against her for exercising her rights under various federal and state employment discrimination statutes.

* Judge Daniel M. Friedman, United States Circuit Judge for the Federal Circuit, sitting by designation.

For the following reasons, we **AFFIRM** the district court's grant of summary judgment.

## I.  BACKGROUND

Health Alliance is a non-profit HMO, and "Alliance Health and Life (AHL), [is] an affiliated profit company selling insurance products." Joint Appendix ("J.A.") at 444 (Shefferly Aff. ¶ 7). Shefferly was hired by Health Alliance in October 1993, as an account representative, but she resigned in July 1996. Shefferly was rehired by Health Alliance in December 1996, as the "manager of agent relations." In September 1997, Shefferly received a two-level position upgrade and $4,500 per year raise, and five agent sales reps and two agent service reps were placed under her supervision. According to Shefferly, the position upgrade and raise corresponded to her promotion to the position of "manager of agent sales." According to Health Alliance, however, the position upgrade and raise were the result of a reorganization of the marketing department and Shefferly was not made "manager of agent sales." Between January and March 1998, Shefferly noticed that her job responsibilities were being taken away. Shefferly also asserts that she was not given a role in a January 1998 agent convention, and that Mark Hall ("Hall"), who was then a director for AHL, told her that "he was handling the entire event and that she should attend the event to 'flirt and drink' with the agents." J.A. at 445 (Shefferly Aff. ¶ 12).

Shefferly contends, "That in late February or early March of 1998, she met with Steve Nelson [('Nelson')], the Vice–President of Marketing, [to report] that Hall was treating her in a demeaning fashion and was having a hard time working with her because of her gender." J.A. at 445 (Shefferly Aff. ¶ 13). According to Shefferly, "Nelson told her that Hall was intimidated by her knowledge and the fact that she was a woman of the same age, ... that she was bruising Hall's ego and that she should be less assertive with Hall." J.A. at 445 (Shefferly Aff. ¶ 13). Shefferly also asserts that in March 1998, she met with Mike Rimes ("Rimes"), the director of government programs, and he told "her that she was acting too aggressively toward Hall and that she should pull back." J.A. at 445 (Shefferly Aff. ¶ 13). Shefferly contends that in March 1998, Doug Zielecki, an account representative, told her that Skaggs said, "Shefferly would be leaving the company soon and that many of her duties would be turned over to Chris Fanning [('Fanning')]."[1] J.A. at 446 (Shefferly Aff. ¶ 15).

Shefferly began her first medical leave on March 26, 1998. When Shefferly returned from this leave on May 11, 1998, she resumed her position as "manager of agent sales," but noticed that she was being cut out of all future projects. Shefferly commenced her second medical leave on May 27, 1998. While Shefferly was on leave, Robert Skaggs ("Skaggs") was transferred to the position of director of commercial group services; Hall became the director of sales for Health Alliance; the sales reps were assigned to Fanning; and the service reps were temporarily assigned to another employee. When Shefferly returned from this leave on July 27, 1998, she was told that Skaggs (not Hall) was her supervisor, even though she was in sales, and that Hall was Fanning's su-

---

1.  According to Shefferly, after Health Alliance transitioned from direct sales to agent sales, Fanning, the manager of direct sales and product development, would no longer have any job responsibilities; therefore, to prevent Fanning's termination, Nelson and Hall gave Shefferly's responsibilities to Fanning.

pervisor. Shefferly was also told that the sales reps were now reporting to Fanning and would continue to do so even though she had returned from leave,[2] but that Shefferly would resume supervision of the two service reps. Shefferly was also told that she had never held the position of "manager of agent sales." Shefferly stated that although she was getting paid her full base salary, she had virtually no job responsibilities from July 27, 1998 though September 9, 1998.

Shefferly began her third medical leave on September 15, 1998. On October 8, 1998, she received a letter from Carolyn Connors ("Connors"), an associate in the human resources department, informing Shefferly that her FMLA leave had expired on July 17, 1998 and of the following company policy:

In conjunction with corporate and departmental needs, departments reserve the right to fill positions which are vacant beyond twelve (12) workweeks under FMLA guidelines. However, in accordance with corporate procedures related to extended medical leaves, efforts will be made to place you in a position for which you are qualified when you are ready and able to return to work. If there is not a position available the earlier of (1) the date at which you are ready and able to return to work or (2) one year after the onset of your disability, you will be released from employment with HAP.

J.A. at 295. On October 27, 1998, Shefferly received a letter from Mario D'Agostino ("D'Agostino"), the manager of human resources, informing Shefferly that her "management position" had been eliminated,[3] but reaffirming that efforts would be made to find her a position when she was ready to return to work. On November 25, 1998, Shefferly sent D'Agostino a letter stating that she was able to return to work immediately.

In 1998, Health Alliance announced several new positions entitled Group Sales Executive ("GSE") broker. The GSE job description expressly required a bachelor's degree and "[a] valid Michigan Health and Life Insurance License," in addition to several years of sales and insurance work experience. J.A. at 304. Shefferly applied for a GSE position in November 1998, and Health Alliance interviewed her for that position on January 6, 1999 and February 2, 1999, even though it knew that Shefferly had not earned a bachelor's degree.[4] On December 8, 1998, Shefferly filed complaints with the Equal Employment Opportunity Commission ("EEOC") and the Michigan Department of Civil Rights ("MDCR"), and Health Alliance's human resources department received those charges via a staff secretary on January 21, 1999. Then, on February 4, 1999, Connors informed Shefferly by telephone that Health Alliance had rejected her application for the GSE position because she had not earned a bachelor's degree.

Everyone who was hired as a GSE broker had earned a bachelor's degree, but

---

2. Shefferly admitted in her deposition, however, that she had previously told Skaggs that she was "happier as the Agent Relations Manager not handling the reps," and also told him that "I need to be on the road for health reasons. If I have to demote position to do so, I will." J.A. at 191–92 (Shefferly Dep.).

3. Skaggs testified in his deposition that Nelson told him "that there were going to be

more layoffs and that marketing would be [a]ffected," and that Skaggs made the decision to eliminate Shefferly's position. J.A. at 262–263 (Skaggs Dep.).

4. Connors testified in her deposition that all internal candidates were interviewed as a courtesy, regardless of whether they met all of the position requirements.

some of those hired did not possess a valid insurance license. According to Connors, however, offers for the GSE positions were conditioned upon the hires obtaining a license within ninety days. On February 9, 1999, Connors wrote Shefferly notifying her that she was terminated because her position as "manager of agent relations" was eliminated and she was not qualified for the GSE position; therefore, there were no available positions for which Shefferly was qualified. On February 10, 1999, Shefferly filed additional complaints with the EEOC and the MDCR based upon the rejection of her application for the GSE position and her termination.

On December 21, 1999, Shefferly filed a complaint in the U.S. District Court for the Eastern District of Michigan asserting discrimination and retaliation claims under state and federal statutes, as well as a common law intentional infliction of emotional distress claim. On July 25, 2001, the district court partially granted Health Alliance's motion for summary judgment. Shefferly filed a motion for reconsideration of that order, which the district court denied on October 23, 2001. On November 12, 2002, the district court granted Health Alliance's motion for summary judgment on Shefferly's remaining claim. Shefferly timely appealed. The district court had jurisdiction pursuant to 28 U.S.C. 1331, 1343, and 1367(c). This court has jurisdiction pursuant to 28 U.S.C. § 1291.

## II. ANALYSIS

### A. Standard of Review

This court reviews de novo the district court's grant of summary judgment. *Waters v. City of Morristown*, 242 F.3d 353, 358 (6th Cir.2001). Summary judgment is proper when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In ruling on a motion for summary judgment, the court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *Waters*, 242 F.3d at 358 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)).

### B. Gender Discrimination Claims

#### 1. Direct Evidence Claim

■ Shefferly first argues that she sufficiently stated a disparate treatment claim via direct evidence. Shefferly points to the following as support for her claim that she was fired due to her gender: Hall told Shefferly that she should "flirt and drink" at the agent convention, and Nelson and Rimes told Shefferly to be less aggressive towards Hall.

In Title VII cases, to state a disparate treatment claim via direct evidence, an employee must produce " 'evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions.' " *DiCarlo v. Potter*, 358 F.3d 408, 415 (6th Cir.2004) (quoting *Jacklyn v. Schering–Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 926 (6th Cir.1999)). "[I]solated and ambiguous comments are too abstract, in addition to being irrelevant and prejudicial, to support a finding of ... discrimination." *Phelps v. Yale Sec., Inc.*, 986 F.2d 1020, 1025 (6th Cir.), *cert. denied*, 510 U.S. 861, 114 S.Ct. 175, 126 L.Ed.2d 135 (1993) (internal quotation marks and citation omitted). Moreover, comments made long before the adverse employment action and comments made by persons other than the decision-maker are not probative of disparate treatment. *See id; Jacklyn*, 176 F.3d at 928. Michigan courts apply the same standards to direct evidence claims. *See Krohn v. Sedgwick James of Mich., Inc.,*

244 Mich.App. 289, 624 N.W.2d 212, 216–19 (2001).

In her appellate brief, Shefferly fails to link either Hall's "flirt and drink" comment or Nelson's and Rimes's comments about Shefferly's aggressiveness to any adverse employment actions; therefore, Shefferly has failed to establish a disparate treatment claim via direct evidence because she has not shown " 'that the challenged employment action was motivated at least in part by prejudice against members of the protected group.' " *DiCarlo*, 358 F.3d at 415 (quoting *Johnson v. Kroger Co.*, 319 F.3d 858, 865 (6th Cir.2003)).

■ Even if we assume that Shefferly is arguing that these comments are direct evidence of the adverse actions she asserts in her circumstantial evidence claim, her direct evidence claim still fails. Although Hall may have been a decision-maker in the transfer of some of Shefferly's duties to Fanning and his "flirt and drink" comment was inappropriate and demeaning, the comment was an ambiguous stray remark. Hall was not a decision-maker in the adverse actions of the elimination of Shefferly's position, the rejection of Shefferly's application for the GSE position, or Shefferly's termination. Moreover, Hall made the "flirt and drink" comment in January 1998, but Shefferly was not rejected for the GSE position or terminated until February 1999; therefore, the comment is too far removed in time to be probative of disparate treatment. Nelson's comment that Shefferly should be less aggressive towards Hall does not compel the conclusion that Nelson was motivated by unlawful discrimination. Similarly, Rimes's comment that Shefferly should be less aggressive towards Hall does not compel the conclusion that Rimes was motivated by unlawful discrimination, and is irrelevant because Rimes was not a decision-maker in any of the alleged adverse actions. Therefore, Shefferly has failed to state a disparate treatment claim via direct evidence for any of the adverse employment actions she asserts in her circumstantial evidence claim.[5]

### 2. Circumstantial Evidence Claim

Shefferly next argues that she sufficiently stated a disparate treatment claim via circumstantial evidence. Shefferly maintains that she established a prima facie case of gender discrimination because: (1) as a woman, she is a member of a protected class; (2) she was qualified for the position because she was the incumbent and received good performance evaluations; (3) she suffered adverse employment actions, in that she asserts that her job responsibilities were transferred to Fanning, her position was eliminated, her application for the GSE position was rejected, and she was terminated; (4) and she was replaced by Fanning – a member of a non-protected class. Shefferly also argues that the district court erroneously analyzed this case under the standards applicable to a reduction-in-force claim. Additionally, Shefferly asserts that the legitimate, nondiscriminatory explanations proffered by Health Alliance are pretextual. In response, Health Alliance argues that Shefferly failed to establish a prima facie case and also failed to demonstrate that the legitimate, nondiscriminatory reasons it proffered to justify the elimination of Shefferly's job, the rejection of Shefferly's application for the GSE position, and Shefferly's termination were pretextual.

In Title VII cases, "When using circumstantial evidence to create an inference of discrimination, the [plaintiff] must carry

---

**5.** Moreover, these comments do not buttress Shefferly's circumstantial evidence claim sufficiently to enable her to withstand Health Alliance's motion for summary judgment.

the initial burden of establishing by a preponderance of the evidence a prima facie case of discrimination by his or her employer." *DiCarlo,* 358 F.3d at 414. To establish a prima facie case in a replacement claim, the plaintiff must produce evidence showing: "(1) he or she was a member of a protected class; (2) he or she suffered an adverse employment action; (3) he or she was qualified for the position; and (4) he or she was replaced by someone outside the protected class or was treated differently than similarly-situated, nonprotected employees." *Id.* at 415. In a reduction-in-force claim, however, to satisfy the fourth element of a prima facie case, the plaintiff must provide "additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out the plaintiff for discharge for impermissible reasons." *Barnes v. Gen-Corp Inc.,* 896 F.2d 1457, 1465 (6th Cir.), *cert. denied,* 498 U.S. 878, 111 S.Ct. 211, 112 L.Ed.2d 171 (1990). Once the plaintiff establishes a prima facie case, "The burden then shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the employee's rejection. Finally, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *DiCarlo,* 358 F.3d at 414–15. (quoting *Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)) (internal quotation marks omitted). Michigan courts follow this same burden-shifting framework when analyzing circumstantial evidence claims brought under Michigan anti-discrimination statutes, and they have even employed the modified fourth element of the plaintiff's prima facie case in reduction-in-force claims. *Hazle v. Ford Motor Co.,* 464 Mich. 456, 628 N.W.2d 515, 520–22 (2001);

*Lytle v. Malady,* 458 Mich. 153, 579 N.W.2d 906, 916–17 (1998).

It is undisputed that Shefferly satisfied the first two elements of her prima facie case for any adverse actions she may have suffered through September 1998. As a woman, Shefferly is a member of a protected class. Because she received satisfactory performance ratings, Shefferly was qualified for the management position she held at that time. The parties dispute, however, whether Shefferly satisfied the third element of her prima facie case by demonstrating that she suffered an adverse employment action.

■ Shefferly argues that when she returned from her second medical leave in July 1998, she was replaced by Fanning, in that nearly all of her job responsibilities were transferred to Fanning. It is undisputed that Shefferly received her full salary and was responsible for supervising the service reps when she returned from this leave; therefore, her contention that she was replaced fails.

■ Shefferly also contends that when she returned from her second medical leave in July 1998, she was demoted from "manager of agent sales" to "manager of agent relations." While Shefferly has produced evidence indicating that her title was once "manager of agent sales," she has produced no evidence that her return to the position of "manager of agent relations" was a demotion, as it did not correspond to a decrease in position-level or salary. This court has indicated that semantic changes in title do not amount to an adverse employment action. *See Kocsis v. Multi–Care Mgmt., Inc.,* 97 F.3d 876, 886 (6th Cir.1996).

■ Shefferly also argues that the reduction of her job responsibilities, alone, constitutes an adverse employment action. This court has specified that the following

can be materially adverse employment actions: "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, *significantly diminished material responsibilities,* or other indices of that might be unique to a particular situation." *Id.* (emphasis added). While Shefferly was out on her second medical leave, the sales reps were transferred to Fanning's supervision and not returned to Shefferly's supervision when she came back to work. Shefferly also produced evidence that she was only working until between ten o'clock in the morning and noon for a period of several weeks. We will assume for purposes of this appeal that this constitutes "significantly diminished material responsibilities"; therefore, Shefferly has shown that she suffered an adverse employment action.

Even if we assume that Shefferly has established a prima facie case of discrimination in regards to the transfer of the sales reps to Fanning's supervision and the reduction of her other responsibilities, Health Alliance has articulated a legitimate, nondiscriminatory explanation. According to Health Alliance, it transferred the sales reps and reduced Shefferly's responsibilities at her request. This explanation is supported by the evidence because Shefferly admitted in her deposition that prior to the transfer of the sales reps, she complained to Skaggs about the amount of time she was spending in the office and told Skaggs that she was happier not managing the sales reps. Shefferly has provided no evidence that Health Alliance's explanation was pretextual. Therefore, Shefferly cannot withstand summary judgment on her disparate treatment claim for any of Health Alliance's actions through September 1998.

■ Shefferly failed to satisfy the fourth element of her prima facie case in regards to the elimination of her management position in October 1998, because she did not provide additional evidence demonstrating that she was singled out. When a plaintiff is terminated pursuant to a reduction in force, he or she must provide "additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out the plaintiff for discharge for impermissible reasons." *Barnes,* 896 F.2d at 1465. Shefferly contends that she was not discharged pursuant to a reduction in force because she was replaced by Fanning. Although this court has specified, "An employee is not eliminated as part of a work force reduction when he or she is replaced after his or her discharge," this court has also recognized that "a person is not replaced when another employee is assigned to perform the plaintiff's duties in addition to other duties, or when the work is redistributed among other existing employees already performing related work." *Id.* Health Alliance provided uncontroverted evidence that Fanning performed product development duties in addition to those duties that he assumed when Shefferly's position was eliminated. Therefore, Shefferly's position was eliminated as part of a reduction in force, and Shefferly was required to present additional evidence indicating that she was singled out but has not done so.

■ Shefferly failed to satisfy the second element of her prima facie case in regards to Health Alliance's rejection of her application for the GSE position because she has not shown that she was qualified for that position. It is undisputed that the written job description for the GSE position required applicants to have earned a bachelor's degree, and that Shefferly had not earned a degree. We reject Shefferly's argument that the bachelor's degree requirement was illusory. Shefferly presented evidence that Richard McHa-

le was told that he was a good candidate even though Health Alliance knew that he did not have a bachelor's degree, and that Shefferly was interviewed twice even though Health Alliance knew that she did not have a bachelor's degree. In *Kocsis,* 97 F.3d at 881, 883, however, we rejected the argument that a job requirement is illusory merely because an unqualified internal applicant was encouraged to apply. Additionally, Shefferly presented evidence that someone at Health Alliance had the authority to waive the bachelor's degree requirement. However, refusal to waive a requirement, alone, is not evidence that the requirement was illusory. Shefferly also presented evidence that Health Alliance bent the rule requiring an insurance license, but Health Alliance presented uncontroverted evidence that the offers for GSE positions were conditioned upon the hires obtaining insurance licenses within ninety days and that all of the hires did obtain licenses. Moreover, bending the rule requiring an insurance license is not probative of the legitimacy of the bachelor's degree requirement because there is no evidence that Shefferly could have obtained a degree within a few months of being hired as a GSE broker. Although Shefferly points out that Health Alliance rushed to hire Mark Ely as a GSE broker, she presented no evidence that Ely had not earned a bachelor's degree. Therefore, Shefferly has not demonstrated that she was qualified for the GSE position.

■ Shefferly failed to prove the fourth element of her prima facie case in regards to her termination because she has not shown that she was "treated differently than similarly situated, non-protected employees." *DiCarlo,* 358 F.3d at 415. Shefferly exceeded her federally protected FMLA leave, and the company had a policy of reserving the right to fill positions of employees who exceeded their FMLA leave and of discharging employees who exceeded their FMLA leave if there was no position for which they were qualified when they were ready to return to work. Shefferly's "management position" was eliminated on October 27, 1999, after Shefferly exceeded her FMLA leave limit but before Shefferly was released to return to work. Shefferly was not qualified for the GSE position and has not provided any evidence that there were other available positions for which she was qualified. Moreover, Shefferly has provided no evidence that she was treated differently than other employees who exceeded their FMLA leave. Therefore, Shefferly cannot withstand summary judgment on her disparate treatment claim based upon the elimination of her position, the rejection of her application for the GSE position, or her termination.

## C. Retaliation Claims

As a threshold matter, Health Alliance argues that Shefferly has abandoned her Elliott–Larsen Civil Rights Act ("ELCRA") retaliation claim on appeal because she failed to identify it in the statement of issues section of her appellate brief. Because the standards for evaluating retaliation claims under Title VII, the ELCRA, the Americans with Disabilities Act ("ADA"), and the Michigan Persons with Disabilities Civil Rights Act ("PWDRCA") are identical and Shefferly referenced them in her appellate brief, we will not treat Shefferly's ELCRA, ADA, or PWDRCA retaliation claims as abandoned, but rather we will address them simultaneously with her Title VII retaliation claim.

■ Shefferly argues that she sufficiently stated a retaliation claim under both Title VII and the ELCRA via circumstantial evidence. Shefferly asserts that

she established a prima facie case of retaliation because: (1) she engaged in a protected activity by filing complaints with the EEOC and the MDCR; (2) the activity was known by Health Alliance because it received notice of her claims prior to rejecting her application for the GSE position and terminating her; (3) Health Alliance took adverse employment actions by rejecting her application and terminating her; (4) and the temporal proximity between Health Alliance receiving notice of the discrimination charges and taking the adverse employment actions demonstrates a causal connection between the protected activity and the adverse employment actions. Additionally, Shefferly asserts that the legitimate, nondiscriminatory explanations proffered by Health Alliance are pretextual.

To establish a prima facie case of retaliation under federal employment discrimination statutes, "a plaintiff must prove by a preponderance of the evidence: 1) plaintiff engaged in [protected activity]; 2) plaintiff's exercise of [such protected activity] was known by the defendant; 3) that, thereafter, the defendant took an employment action adverse to the plaintiff; and 4) that there was a causal connection between the protected activity and the adverse employment action." *DiCarlo*, 358 F.3d at 420 (quoting *Equal Employment Opportunity Comm'n v. Avery Dennison Corp.*, 104 F.3d 858, 860 (6th Cir.1997) (internal quotation marks omitted)). Michigan courts have applied this same framework to retaliation claims under state anti-discrimination statutes. *Roulston v. Tendercare (Mich.), Inc.*, 239 Mich.App. 270, 608 N.W.2d 525, 529 (2000); *DeFlaviis v. Lord & Taylor, Inc.*, 223 Mich.App. 432, 566 N.W.2d 661, 663 (1997).

In *DiCarlo*, we held that the passage of only twenty-one days between the plaintiff's filing of an EEOC charge and the plaintiff's termination gave rise to an inference of discrimination. *DiCarlo*, 358 F.3d at 421–22. Therefore, in this case, Shefferly has established a prima facie case of retaliation under federal law based upon the temporal proximity between her filing of discrimination charges, and the rejection of her application for the GSE position and her termination. Shefferly engaged in protected activity by filing charges with the EEOC and the MDCR; Health Alliance knew of this activity because the human resources department received the charges on January 21, 1999; thereafter Health Alliance took adverse employment actions by rejecting Shefferly's application for the GSE position on February 4, 1999, and terminating Shefferly on February 9, 1999; and the passage of less than three weeks between Health Alliance's receipt of the charges and the adverse actions gives rise to an inference of discrimination. Health Alliance, however, articulated legitimate, nondiscriminatory explanations for both of these employment actions. Health Alliance rejected Shefferly's application for the GSE position because she was not qualified and terminated Shefferly because there were no available positions for which she was qualified. As discussed above, Shefferly has not provided sufficient evidence to demonstrate that Health Alliance's proffered explanations were pretextual.[6] Therefore, the district court did not err by granting Health Alliance's motion for summary judgment on Shefferly's retaliation claims.

## III. CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's grant of summary judg-

---

**6.** This conclusion also disposes of Shefferly's state-law retaliation claims.

ment to Health Alliance on all of Shefferly's claims.