NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a0997n.06

No. 13-5211

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

Nov 21, 2013

DEBORAH S. HUNT, Clerk

GUILLERMO HERRERA, )
)
Plaintiff-Appellant, )
)
v. )
)
CHURCHILL MCGEE, LLC; NATHAN )
CHURCHILL; PATRICK MCGEE, )
)
Defendants-Appellees. )

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE EASTERN
DISTRICT OF KENTUCKY

O P I N I O N

BEFORE:    SILER, COLE, and COOK, Circuit Judges.

COLE, Circuit Judge.  We remanded this case to the district court to consider Guillermo Herrera's claim that his former employer unlawfully retaliated against him by firing him because he complained about racial discrimination.  After considering the claim, the district court granted summary judgment in favor of the employer.  Because Herrera cannot show that the employer's reason for firing him was a pretext, we affirm.

**I. BACKGROUND**

We have recounted the facts and procedural history of this matter before.  *See Herrera v. Churchill McGee, LLC*, 680 F.3d 539, 542–44 (6th Cir. 2012).  Briefly, Guillermo Herrera was hired in June 2003 as a laborer by Churchill McGee, LLC, a construction company owned by Nathan Churchill and Patrick McGee.  As early as the fall of 2007, Herrera began complaining that Churchill McGee was discriminating against him because he is African-Cuban.  He complained of

the same to the owners in February 2008. The next month Herrera was arrested, pled guilty to a misdemeanor, and was jailed for a week, missing five days of work. When he tried to return to work on March 22, Nathan Churchill fired him. Churchill McGee confirmed Herrera's termination by letter two days later. The letter stated that Herrera was being fired "due to unsatisfactory attendance and incarceration in jail following conviction of a misdemeanor or felony by a court of competent jurisdiction, which results in missing at least five (5) days work."

Herrera then filed a complaint with the Lexington-Fayette Urban County Human Rights Commission, claiming in part that he had been fired on account of his race and national origin. After conducting an investigation and finding no probable cause to sustain the discrimination claim, the Commission dismissed Herrera's complaint. The Commission determined that Churchill McGee did not treat Herrera differently than its similarly situated white employees. Herrera did not seek judicial review of the dismissal.

Herrera, now represented by counsel, filed this action instead. Among other things, he claimed that the defendants violated 42 U.S.C. § 1981 by discriminating and retaliating against him. After various motions and a partial settlement, the district court entered summary judgment in favor of Churchill McGee. On appeal, we affirmed the grant of summary judgment on Herrera's race discrimination claim, finding it barred by issue preclusion because of the Commission's decision. 680 F.3d at 551. We reversed and remanded Herrera's retaliation claim, however, because the Commission's decision did not fully address whether Churchill McGee's reasons for firing Herrera were a pretext for retaliation. *Id.* at 551–52. On remand, the district court again granted summary judgment in favor of Churchill McGee. It found that Herrera could not establish a causal connection

between his complaints about discrimination and his discharge, which is necessary for a prima facie case of retaliation. It found further that Herrera could not show that Churchill McGee's reasons for firing him were merely a pretext.

Herrera appeals, and 28 U.S.C. § 1291 gives us jurisdiction to hear it.

## II.  ANALYSIS

42 U.S.C. § 1981 prohibits an employer from retaliating against an employee for opposing racial discrimination. *See CBOCS West, Inc. v. Humphries*, 553 U.S. 442, 454–55 (2008). Section 1981 retaliation claims are governed by the same burden-shifting standards as Title VII retaliation claims. *Wade v. Knoxville Utilities Bd.*, 259 F.3d 452, 464 (6th Cir. 2001). A plaintiff may make a prima facie case of retaliation by showing that (1) he engaged in protected activity, (2) the activity was known to the defendant, (3) the plaintiff was subjected to a materially adverse action, and (4) there was a causal connection between the protected activity and the adverse action. *Harris v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.*, 594 F.3d 476, 485 (6th Cir. 2010). Upon this showing, the defendant must articulate a legitimate, nonretaliatory reason for its action. *Id.* The plaintiff then must show that the proffered reason was a pretext for retaliation. *Id.*

At the summary judgment stage, we view the burden-shifting standards in light of the traditional summary judgment test. *Singfield v. Akron Metro. Hous. Auth.*, 389 F.3d 555, 563 (6th Cir. 2004). Thus, Herrera need not prove his prima facie case by a preponderance of the evidence at this time; the burden of establishing the prima facie case on summary judgment is "easily met." *Id.* Moreover, because Churchill McGee moved for summary judgment, we consider the evidence and draw all reasonable inferences in the light most favorable to Herrera. *See Tysinger v. Police*

*Dep't of City of Zanesville*, 463 F.3d 569, 572 (6th Cir. 2006). We review a grant of summary

judgment de novo. *Wallace v. Midwest Fin. & Mortg. Servs., Inc.*, 714 F.3d 414, 418 (6th Cir.

2013).

### A. Prima Facie Case

We agree with the district court's findings that Herrera established the first three prongs of

his prima facie retaliation case. *See Herrera v. Churchill McGee, LLC*, No. 09-72-KSF, 2013 WL

211079, at *6–7 (E.D. Ky. Jan. 18, 2013). He engaged in protected activity known to Churchill

McGee when he complained to Churchill and McGee in February 2008, if not earlier, that he was

being treated differently than white, non-Cuban employees. (*See, e.g.*, Pls. Answers to

Interrogatories, PageID 2519; Geoff Hampton Affidavit, PageID 1085–86; Herrera Dep., PageID

1275–77; *see also* Employer Statement to Ky. Office of Employment & Training, PageID 653.)

Churchill McGee's arguments to the contrary are unavailing. Herrera's interrogatory responses

clearly refer to at least one complaint made to Churchill and McGee in February 2008, the month

before he was fired. And Herrera's affidavit and deposition testimony that he also complained of

discrimination in the fall of 2007 is consistent with this evidence. No one disputes that Herrera

suffered a materially adverse action when he was fired.

Herrera does challenge, however, the district court's ruling that he did not show a causal

connection between his complaints about discrimination and his firing. First, he argues that the

district court erred in holding that mere temporal proximity could never establish the causal prong.

We agree. In *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 523–25 (6th Cir. 2008), the court

discussed our various decisions about this issue, including *Nguyen v. City of Cleveland*, 229 F.3d

559 (6th Cir. 2000), which gave rise to the cases relied on by the district court and Churchill McGee. We explained that *Nguyen* itself noted that "there may be circumstances where evidence of temporal proximity alone would be sufficient to support" the inference of a causal link, 229 F.3d at 567, and based on our understanding of a number of other precedential cases, we ultimately held the following: "Where an adverse employment action occurs very close in time after an employer learns of a protected activity," such temporal proximity alone may satisfy the causal prong of a plaintiff's prima facie retaliation case. *Mickey*, 516 F.3d at 523–25. In those "limited" and "rare" cases, we can infer a causal connection between the two actions without other evidence of retaliation. *Id.* "But where some time elapses between when the employer learns of a protected activity and the subsequent adverse employment action, the employee must couple temporal proximity with other evidence of retaliatory conduct to establish causality." *Id.* at 525.

Second, Herrera is also correct that "a court may not consider the employer's alleged [nonretaliatory] reason for taking an adverse employment action when analyzing the prima facie case." *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 574–75 (6th Cir. 2003) (en banc). To do otherwise, our court has reasoned, "would bypass the burden-shifting analysis and deprive the plaintiff of the opportunity to show that the [nonretaliatory] reason was in actuality a pretext designed to mask [retaliation]." *Id.* (citing *Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 660–61 (6th Cir. 2000) ("[W]hen assessing whether a plaintiff has met her employer's legitimate expectations at the prima facie stage of a termination case, a court must examine plaintiff's evidence independent of the nondiscriminatory reason 'produced' by the defense as its reason for terminating plaintiff.")).

This case presents a sufficiently close temporal proximity to allow us to make an inference of causation. Viewing the facts most favorably to Herrera, he began complaining of discrimination in the fall of 2007. He last complained directly to Churchill McGee in February 2008, and he was fired the next month. The district court agreed that "there is proximity between his alleged complaints to the Defendants and his termination." 2013 WL 211079, at *7. Considering the facts and drawing all reasonable inferences in favor of Herrera, as we must, and considering that the burden of establishing a prima facie case on summary judgment is "easily met," this series of events allows us to infer a causal connection between Herrera's complaints and his being fired. Our cases support this conclusion. *See, e.g.*, *Singfield*, 389 F.3d at 563 (three-month proximity was sufficient); *Asmo v. Keane, Inc.*, 471 F.3d 588, 594 (6th Cir. 2006) (two months); *Goller v. Ohio Dep't of Rehab. & Corr.*, 285 F. App'x 250, 257 (6th Cir. 2008) (two months); *DiCarlo v. Potter*, 358 F.3d 408, 421–22 (6th Cir. 2004) (twenty-one days); *Shefferly v. Health Alliance Plan of Mich.*, 94 F. App'x 275, 285 (6th Cir. 2004) (about three weeks); *see also Nguyen*, 229 F.3d at 566–67 ("[P]revious cases that have permitted a prima facie case to be made based on the proximity of time have all been short periods of time, usually less than six months." (internal quotation marks omitted)). *But see Cooper v. City of N. Olmsted*, 795 F.2d 1265, 1272 (6th Cir. 1986) (four months was insufficient).

We stress that Herrera has presented a minimal amount of circumstantial evidence. Nonetheless, it meets the low burden of establishing a prima face case. Herrera's evidence is sufficient, in other words, to require Churchill McGee to provide a legitimate, nonretaliatory reason for firing him. *See EEOC v. Avery Dennison Corp.*, 104 F.3d 858, 861–62 (6th Cir. 1997) (noting

that the prima facie case is "only the first stage of proof," and its purpose is simply to "force [a] defendant to proceed with its case"); *Cline*, 206 F.3d at 660 ("This division of intermediate evidentiary burdens is not meant to stymie plaintiffs, but simply serves to 'bring the litigants and the court expeditiously and fairly to the ultimate question.'" (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981))).

## B.     Nonretaliatory Reason

Churchill McGee's termination letter to Herrera claims it fired him "due to unsatisfactory attendance and incarceration in jail following conviction of a misdemeanor or felony by a court of competent jurisdiction, which results in missing at least five (5) days work."  We find this to be a legitimate, nonretaliatory reason to fire Herrera.

Herrera asserts that Churchill McGee also claims to have fired Herrera because his performance was inadequate.  Churchill McGee makes no such claim in its termination letter or before us on appeal, so we do not consider it.

## C.     Pretext

To prove pretext, a plaintiff must show that his employer's proffered reason was false and that retaliation was the real reason for the adverse action. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993).  A plaintiff may prove a reason false by showing that it (1) had no basis in fact, (2) did not actually motivate the employer's action, or (3) was insufficient to motivate the employer's action. *Harris*, 594 F.3d at 486.  These three categories are simply a "convenient way of marshaling evidence and focusing it on the ultimate inquiry: did the employer fire the employee for the stated reason or not?" *Tingle v. Arbors at Hilliard*, 692 F.3d 523, 530 (6th Cir. 2012) (internal quotation

marks omitted). A plaintiff may prove retaliation to be the real reason through direct or indirect evidence, including the falsity of the employer's explanation. *See Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 147 (2000). Still, "the plaintiff retains the ultimate burden of producing sufficient evidence from which the jury could reasonably reject the defendants' explanation and infer that the defendants intentionally [retaliated] against him." *Johnson v. Kroger Co.*, 319 F.3d 858, 866 (6th Cir. 2003) (internal quotation marks omitted).

Herrera does not dispute that he missed five days of work because he was incarcerated, or that missing work due to incarceration was sufficient to motivate Churchill McGee to fire him. Herrera's best argument is that his missing work did not actually motivate Churchill McGee to fire him. We have noted that in making such a motivation argument, a plaintiff must show that the "sheer weight of the circumstantial evidence of [retaliation] makes it more likely than not that the employer's explanation is a pretext, or coverup." *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994) (internal quotation marks omitted), *overruled on other grounds by Geiger v. Tower Auto.*, 579 F.3d 614 (6th Cir. 2009).

Herrera makes only one argument about his five-day jail time: Churchill McGee could not have been motivated to fire Herrera for missing those days of work because they did not fire a similarly situated white employee, Alan Krasinski, who missed almost 150 days of work because he was incarcerated. Churchill McGee offers various counterarguments, but in the end the dispute is settled by issue preclusion and our prior opinion. Simply put, it is the law of the case that "Churchill McGee did not treat Herrera differently than similarly situated white employees." *Herrera*, 680 F.3d at 551. Thus, Herrera cannot successfully maintain this argument.

Herrera raises a few other points, but they do not stack up high enough to meet his burden. For example, Churchill McGee contends that Herrera had other attendance issues, a claim it attempts to support with a letter from McGee to the county human rights commission summarizing Herrera's alleged absences and tardiness. Herrera argues that reliance on the letter is improper, insisting that Federal Rule of Evidence 1006 would prohibit its admission at trial because no underlying documentation supports the summary. *See* Fed. R. Civ. P. 56(c)(2) ("A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."). Regardless of its merits, this argument has little bearing on whether Herrera's five-day incarceration in March 2008 actually motivated Churchill McGee to fire Herrera.

Moreover, Herrera must show not only that Churchill McGee did not fire him because he missed work, but also that it fired him in retaliation for complaining about discrimination. *See Reeves*, 530 U.S. at 147; *Tingle*, 692 F.3d at 530 ("[T]he plaintiff was required to offer evidence from which a jury could reasonably reject the defendants' stated reason for [firing] her, and that it used those reasons to mask its retaliation against her . . . ."). Herrera simply does not put forward sufficient proof on this point. Ultimately, he cannot carry his burden to prove pretext. Thus, it was proper to award Churchill McGee summary judgment.

### III. CONCLUSION

Because we find that Herrera's retaliation claim cannot survive summary judgment on the merits, we need not reach Churchill McGee's argument that claim preclusion also prevents relief. In addition, Herrera's spoliation argument lacks merit because no authority supports the assertion

that the district court abused its discretion by failing to deny summary judgment as a sanction for

alleged spoliation.

The district court's judgment is affirmed.