**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 09a0307n.06
Filed: April 28, 2009

**No. 08-6035**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| TANYA HOLLIMON, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| SHELBY COUNTY GOVERNMENT, | ) | WESTERN DISTRICT OF TENNESSEE |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

Before: BOGGS, Chief Judge; and MOORE and SUTTON, Circuit Judges.

SUTTON, Circuit Judge. Tanya Hollimon filed a lawsuit under Title VII of the Civil Rights Act of 1964, alleging that Shelby County fired her because of her race and in retaliation for engaging in protected activity. After a bench trial, the district court ruled for Hollimon. The county appeals, and we affirm.

I.

Starting in October 1987, Hollimon worked as a police officer for the Shelby County Police Department. In June 2002, the county fired Hollimon for the following alleged reasons: She challenged a department policy requiring officers to work at least one holiday per year; she failed to report to work on an assigned holiday; she called into a radio talk show (while on duty) to complain about several

department polices and practices; she left her squad car during a lunch break—an alleged breach of department policy; and she took an extended lunch break.

The county suspended Hollimon on June 5, at which time it presented her with a letter detailing the charges against her. The letter (and a subsequent oral command) instructed Hollimon to turn in her service pistol and county ID cards. She refused, prompting the county to add a new charge—willfully disregarding a police-department order.

On June 6, Hollimon filed a charge of discrimination with the EEOC, alleging that the county suspended her due to her race and sex and in retaliation for filing earlier EEOC complaints. The EEOC issued Hollimon a right-to-sue letter four days later, but Hollimon chose not to file a lawsuit at that point.

Meanwhile, the county held a pre-discharge hearing, found sufficient evidence to corroborate the charges and fired Hollimon on June 28. Hollimon appealed the decision to the Shelby County Civil Service Merit Board. After two hearings, the board upheld Hollimon's discharge, finding that she had violated the policies of the police department. When she appealed this decision, the state courts affirmed.

In December 2002, as the state proceedings moved on, Hollimon filed a second charge with the EEOC, alleging that her *discharge* stemmed from race discrimination and retaliation. The EEOC again issued a right-to-sue letter, after which she filed this Title VII lawsuit on December 8, 2003.

After a two-day bench trial, the district court ruled in favor of Hollimon on her race and retaliation claims, finding that the county's explanations for the discharge were pretextual. *See Hollimon v. Shelby County Gov't*, No. 03-02919, 2008 WL 901490, at *7 (W.D. Tenn. Mar. 31, 2008). It awarded Hollimon

$35,000 in damages but did not award attorney's fees (because she represented herself), and it denied her request for reinstatement. The county appeals.

## II.

In this setting, we give fresh review to the district court's legal conclusions and clear-error review to its factual findings. *See Madden v. Chattanooga City Wide Serv. Dep't*, 549 F.3d 666, 673–74 (6th Cir. 2008).

## A.

The county first argues that Hollimon's claims are time barred. To pursue Title VII claims in federal court, a plaintiff must file a complaint within 90 days of receiving a right-to-sue letter from the EEOC. 42 U.S.C. § 2000e-5(f)(1). All agree that Hollimon filed this complaint within 90 days of receiving her most recent right-to-sue letter, but the county maintains that she should have filed the lawsuit after the EEOC issued its first right-to-sue letter.

One premise of the county's argument is correct: Title VII does not allow a plaintiff who misses the 90-day window to resurrect the same claims by including them in a new EEOC charge, restarting the process and resetting the limitations clock. *See, e.g.*, *Adams v. Tenn. Dep't of Fin. & Admin.*, 179 F. App'x 266, 271 (6th Cir. 2006); *Brown v. Unified Sch. Dist. 501*, 465 F.3d 1184, 1186 (10th Cir. 2006). Yet the second premise of the county's argument is not: Hollimon's first and second EEOC charges do not raise the same claims. Her June 2002 charge alleges that her *suspension* violated Title VII, while her December 2002 charge alleges that her *discharge* violated Title VII. Those two actions—a suspension

and a discharge—constitute "discrete discriminatory acts," making claims arising out of these two different actions distinct. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002); *see also Zamora v. Elite Logistics, Inc.*, 478 F.3d 1160, 1167 (10th Cir. 2007); *O'Connor v. City of Newark*, 440 F.3d 125, 127 (3d Cir. 2006).

It may be that the claims are related, because they arise from the same dispute and because the county largely relied on the same conduct in justifying each action. But that does not prevent Hollimon from challenging them separately. The existence of a past discriminatory act "does not bar employees from filing charges about related discrete acts so long as the acts are independently discriminatory and charges addressing those acts are themselves timely filed." *Morgan*, 536 U.S. at 113. In this instance, the discharge was not an inevitable "consequence" of the suspension, *see Del. State Coll. v. Ricks*, 449 U.S. 250, 258 (1980), and the county hardly could claim otherwise—unless it wishes to acknowledge that the procedural protections provided after it suspends an employee are all show and no substance. The act of firing employees, as opposed to suspending them pending further investigation and constitutionally required administrative processes, is a distinct discriminatory act. *See Morgan*, 536 U.S. at 113. Because Hollimon challenged the second of these acts—the discharge—on a timely basis, her claims are not time barred.

B.

The county adds that issue preclusion bars Hollimon's claims. Because the merit review board determined—and the state courts affirmed—that the county had just cause for terminating Hollimon, the

county maintains that Hollimon cannot now argue that her termination was motivated by racial or retaliatory animus.

Federal courts must give state-court judgments—including those affirming state administrative-agency decisions—the same preclusive effect that the state courts would give them. 28 U.S.C. § 1738; *Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 466 (1982). That is no less true for Title VII actions. *See Kremer*, 456 U.S. at 476. To establish issue preclusion under Tennessee law, the following must be true: (1) the issue is identical to an issue decided in an earlier suit; (2) the issue was "actually litigated and decided on its merits in the earlier suit"; (3) "the judgment in the earlier suit has become final"; (4) the party against whom issue preclusion is asserted "was a party or is in privity with a party to the earlier suit"; and (5) the party against whom issue preclusion is asserted "had a full and fair opportunity in the earlier suit to litigate the issue now sought to be precluded." *Beaty v. McGraw*, 15 S.W.3d 819, 824–25 (Tenn. Ct. App. 1998).

The county fails to make it past the first step. The state courts did not "litigate[] and decide[]" the race or retaliation issues because neither claim was in front of the state courts. In challenging the decision of the merit review board that there was good cause for her discharge, Hollimon did not file a claim—under state or federal law—that the county discriminated against her based on race or in retaliation for engaging in constitutionally protected conduct. She simply argued that the county did not have good cause for firing her. No doubt, in resolving that issue, the state courts concluded that Hollimon "violate[d] the policies and procedures of the Shelby County Government and the Shelby County Policy Department," and concluded that these violations provided just cause for her discharge. Appellant's App.

at 40. But they did not decide whether those stated justifications were the *real* reason behind Hollimon's firing or just a facade under Title VII's burden-shifting framework. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000). Hollimon is not precluded from litigating that question now—in the distinct context of a Title VII claim.

In summarizing the evidence, it is true, the board referenced testimony by Hollimon to the effect that her termination was retaliatory. (She never testified that it was racially discriminatory.) But nothing comes of this reference. The board never decided one way or another whether retaliation was involved, and neither as a result did the state trial and appellate courts. Nor, quite understandably, do the board and state courts ever say anything about the second theory of this successful Title VII claim: race discrimination. We need not decide whether claim preclusion would have barred Hollimon's claims, or even whether it applies in this setting, because the county never argued the point in its motion for judgment as a matter of law or on appeal.

## C.

Having contended that Hollimon has litigated this issue too many times, the county next contends that she has not argued it enough—because she failed to exhaust all of her administrative remedies in the federal agency. Before bringing a Title VII claim in federal court, a litigant must raise the claim in a discrimination charge filed with the EEOC. *Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724, 731 (6th Cir. 2006). To give teeth to this requirement, case law requires the claimant to show (1) that the Title VII claims were raised directly in her EEOC charge or (2) that the claims included in the EEOC charge would prompt the agency to uncover the other claims during an investigation "reasonably expected

to grow out of the charge of discrimination." *Weigel v. Baptist Hosp. of E. Tenn.*, 302 F.3d 367, 380 (6th Cir. 2002) (internal quotation marks omitted).

The county argues that Hollimon's claims exceed the scope of the EEOC charge because the charge does not cover the firing. Although Hollimon was fired on June 28, 2002, the EEOC charge at one point mentions August 1, 2002, as the "earliest" date of discrimination. Appellant's App. at 15. Yet this anomaly would not prevent a reasonable EEOC investigator, reading Hollimon's pro se charge as a whole, from investigating her June 28 discharge. Elsewhere in the EEOC charge, Hollimon complains about acts of discrimination dating back to 2000, which picks up the June 28 discharge, and she later says that the county's discrimination and retaliation "culminat[ed] in [her] eventual discharge on June 28, 2002." *Id.* Piecing the puzzle together, a reasonable investigator would have inferred one of two things: (1) that Hollimon raised alternative theories of discrimination (at least one of which directly covers today's claim) or (2) that she made a mistake in completing the form on her own—by inadvertently flipping the "earliest" and "latest" dates or by writing "August 1, 2002," instead of August 1, 2000, as the earliest date of discrimination. Either way, the terms of the charge would prompt the agency to explore the circumstances surrounding Hollimon's June 28, 2002 discharge, and that suffices to satisfy the exhaustion requirement. *Cf. Randolph*, 453 F.3d at 732; *Weigel*, 302 F.3d at 380–81.

D.

The county next argues that Hollimon failed to establish a prima facie case of retaliation because she failed to identify a similarly situated employee of the police department who was treated more favorably than she was. But the county forfeited this argument by failing to present it to the district court.

It did not raise the issue in its summary judgment motion or in any of its motions for a new trial and judgment as a matter of law, focusing instead on other defenses. *See* ROA 35–36, 177–78, 190–93, 194–94, 207–204. Having made that choice below, the county must live with it here. *See Barner v. Pilkington N. Am., Inc.*, 399 F.3d 745, 749 (6th Cir. 2005).

The argument, for what it is worth, would appear to fail on the merits anyway. In reviewing a successful discrimination claim after a bench trial, the question is not whether the plaintiff made out a prima facie case but whether, after the back-and-forth burden shifting, she provided sufficient evidence to support an affirmative answer to the last question in the framework: Did the county intentionally discriminate against Hollimon? *See Barnes v. City of Cincinnati*, 401 F.3d 729, 736 (6th Cir. 2005). Did Hollimon in other words produce evidence "from which the district court, as trier of fact, could reasonably find that" the county's proffered reasons for Hollimon's termination were "unworthy of credence"? *Madden*, 549 F.3d at 675 (internal quotation marks omitted); *see also Reeves*, 530 U.S. at 148.

To prove that the county's professed justifications were not its real ones, Hollimon had to show one of three things: (1) that they had no basis in fact, (2) that they did not actually motivate the discharge or (3) that they were insufficient to motivate the discharge. *See Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994). Sitting as the finder of fact, the district court found for Hollimon on the ground that the county did not discharge non-minority employees when they engaged in comparable misconduct, and therefore Hollimon's alleged misconduct either did not or could not have motivated the county's action.

Sufficient evidence supports the district court's conclusion. At trial, Hollimon presented evidence that non-minority officers were not disciplined for violating the following department policies: (1) leaving their patrol cars during lunch; (2) eating lunch outside of a five-building area; (3) parking their personal vehicles in unapproved locations; and (4) talking on personal cell phones while operating county vehicles. While Hollimon did not find an employee who violated each of the policies she (allegedly) did, she put in sufficient evidence showing that, when other similarly situated employees violated many of the same policies, the county either looked the other way or did not bother to enforce the policy. As for the other policies that Hollimon violated, but for which no analogous employee was found—failing to sign up for a holiday on which to work, failing to work on the assigned holiday and failing to turn in her service weapon and county ID cards when ordered to do so—the district court gave plausible explanations for concluding that they did not justify the discharge. The county, the district court reasoned, gave Hollimon little notice of the holiday-work obligation and only a single work shift to select a holiday (while her coworkers were given more time), and her failure to hand over her service weapon and ID cards stemmed more from fear than from disobedience—Hollimon, indeed, turned the items in the very next morning. Whether we would reach this same conclusion in the first instance matters not. The district court, as the finder of fact, picked a reasonable way to read the evidence, and we have no license to reject its amply supported conclusions.

E.

The county, lastly, argues that, because Hollimon did not testify at the bench trial, the district court committed reversible error when it stated in its opinion that it found "Plaintiff's testimony and proof to be credible." ROA 124. We disagree.

It is not clear, for starters, what to make of the court's statement. When it referred to "Plaintiff's testimony," it may well have been referring to Hollimon's testimony before the merit board. When we remove the ellipsis and consider the full sentence from beginning to end, it indeed supports this interpretation: "The Court has observed the demeanor of the Plaintiff and the witnesses, reviewed the evidence and the *administrative records*, and finds Plaintiff's testimony and proof to be credible." ROA 124 (emphasis added). There is nothing wrong, as the county concedes, with "a federal district judge in a non-jury case . . . mak[ing] credibility judgments by evaluating the written testimony [from] the Shelby County Civil Service hearing." Br. at 54; *Cf., e.g.*, *United States v. Davis*, 261 F.3d 1, 39 n.34 (1st Cir. 2001); *Buckanaga v. Sisseton Indep. Sch. Dist.*, 804 F.2d 469, 474 (8th Cir. 1986).

But even if we assume that the statement dignified testimony that Hollimon never gave, any error was harmless. *See* Fed. R. Civ. P. 61. It is difficult to see how the county was prejudiced by the district court's crediting testimony that did not exist: Nowhere else in its written decision did the district court refer to "Plaintiff's testimony," much less indicate that it relied on an in-person evaluation of Hollimon's credibility to decide the case. By contrast, it referred repeatedly to other pieces of evidence—the testimony of two police officers, trial exhibits and the administrative record. That evidence provides plenty of "assurance" that "the trial's outcome was not altered" by this error. *Beck v. Haik*, 377 F.3d 624,

635 (6th Cir. 2004) (internal quotation marks omitted), *overruled on other grounds by Adkins v. Wolever*,

554 F.3d 650 (6th Cir. 2009) (en banc).

III.

For these reasons, we affirm.