Rebecca BURTON, Appellant,

v.

KENTUCKY STATE POLICE; Tracy Collins; Anthony Terry; Curt Hall; and John Jack Adams, Appellees.

No. 2010–CA–000292–MR.

Court of Appeals of Kentucky.

April 1, 2011.

Robert L. Bertram, Jamestown, KY, for appellant.

Roger G. Wright, Frankfort, KY, for appellees.

Before CAPERTON and COMB, Judges; LAMBERT,[1] Senior Judge.

## OPINION

CAPERTON, Judge:

Rebecca Burton appeals from the grant of summary judgment in favor of the Appellees—the Kentucky State Police ("KSP"), Tracy Collins,[2] Anthony Terry,[3] Curt Hall,[4] and John Jack Adams[5]—by the Franklin Circuit Court. On appeal Burton asserts that the trial court erred in its grant of summary judgment. After a thorough review of the parties' arguments, the record, and the applicable law, we disagree with Burton and, accordingly, affirm.

The facts that give rise to this appeal stem from Burton's brief stint[6] as a Cadet Trooper at the Kentucky State Police training academy. While at the training academy, Burton was subjected to an environment similar to military basic training. During a running exercise, Burton alleges that one of the instructors, Ms. Tracy Collins, shouted at Burton, "Do you have on a sports bra? You disgust me." Burton also alleges that Collins used profanity in her presence when she stated "Just go ahead and kick the s* *t out of the wall." Burton also alleges that the Cadets were not allowed to sleep or rest for twenty-four hours, that they were required to fill their drinking containers from a hose, and that bleeding[7] Cadets were required to share meal tables with others.[8]

Thereafter, Burton resigned from her employment with the Kentucky State Police[9] and subsequently filed a complaint

1. Senior Judge Joseph E. Lambert sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and Kentucky Revised Statutes (KRS) 21.580.

2. Collins was Burton's instructor at the KSP training academy, and allegedly shouted profanities at Burton and suggested she also put on a sports bra during a run.

3. Terry was the KSP Academy Commander. Burton alleges that he failed to properly supervise his staff.

4. Hall was also an instructor at the KSP Academy, and allegedly witnessed the comments made by Collins and failed to report said comments to his commanding officer.

5. Adams was the KSP Commissioner.

6. Burton was a Cadet Trooper from September 9 through September 10, 2007.

7. While at first blush the incident concerning blood appears troubling, Appellees explained that this incident involved a Cadet who cut himself shaving and that Burton does not

claim to have been exposed to any of the blood, nor does she know if the Cadet was situated close to her.

8. Let us envision what may likely be the responsibilities of Kentucky State Troopers. Certainly all Troopers need to exhibit courteous conduct and polite demeanor when the situation demands such response, but these individuals must be psychologically prepared and physically adept to correctly respond to emergency situations, whether those be the oft publicized "raids," gun battles, apprehending fleeing criminals, or protection of the public, to name only a few. We must also not forget that they must survive life-threatening situations while performing their duties and may be called upon to give their life in the performance of their duties, certainly not a calling for those who are timid and weak or lack either resolve or strong personal conviction in their duties.

9. Burton informed the KSP on the exit forms that her reason to resign on September 10, 2007, was due to her physical limitations

with the Kentucky Commission on Human Rights ("KCHR"), alleging that she had been sexually harassed during her employment. KCHR dismissed the complaint on March 20, 2008, based on a finding of no probable cause. On November 3, 2008, Burton filed her complaint with the trial court, alleging hostile work environment, sexual harassment, constructive discharge, and intentional infliction of emotional distress against the Appellees. The Appellees moved the trial court for summary judgment, asserting that the claims against the KSP were barred by the doctrine of election of remedies and governmental immunity; that the claims against the individuals were barred by the doctrine of qualified immunity; and that Burton's claims simply could not be sustained on their merits.

The trial court agreed with the Appellees that they were entitled to summary judgment based on the doctrine of election of remedies, and that they were entitled to official immunity and qualified immunity. Additionally, the trial court found that, even conceding all facts alleged by Burton to be true, she had failed to state a claim upon which relief can be granted. The trial court found that her allegations were not sufficient to sustain her claims of hostile work environment, sexual harassment, constructive discharge, or intentional infliction of emotional distress. The trial court determined that if Burton's allegations—that she was treated crudely and was perhaps subjected to verbal abuse—were true, that such treatment did not establish a violation of her rights. She had not alleged any disparate treatment based on gender, and the trial court further noted that it is undisputed that many women have successfully completed the KSP academy. The trial court additionally noted that the alleged behavior is not outside the bounds of acceptable conduct in a military-style training program in which the cadets are required to be subjected to stressful situations. Given that troopers on the road are subjected to much worse verbal abuse from the public, and must be prepared to not overact to such abuse, the trial court determined that it is important to the KSP to see how cadets react to stressful situations, and that the academy is not a finishing school or a purely academic program. Thus, the trial court concluded that the record did not contain sufficient evidence to establish a prima facie case that Burton's rights were violated during her brief time as a trooper cadet, and granted the Appellees' motion for summary judgment. It is from those findings that Burton now appeals.

On appeal, Burton presents two arguments; namely, that the Appellees were not entitled to summary judgment, and that Burton was treated unlawfully by the Appellees. The Appellees counter-argue that the trial court properly granted summary judgment for a number of reasons, more specifically, the doctrine of election of remedies, the Appellees were entitled to governmental immunity, and individual Appellees were entitled to qualified immunity. The Appellees argue first that Burton's KRS Chapter 344 claim against KSP is barred by the doctrine of election of remedies. Second, that Burton's intentional infliction of emotional distress ("IIED") claim against KSP and official capacity defendants was properly dismissed due to the KRS Chapter 344 claim, governmental immunity, and that the IIED claim must fail against the individual defendants based on the elements composing a claim of IIED. Third, Burton's Chapter 344 claim fails on the merits. Fourth, the individual defendants were entitled to qualified immunity on the IIED claim. With these arguments in mind, we now turn to the applicable law.

At the outset we note the applicable standard of review on appeal of a grant of summary judgment is "whether the trial court correctly found that there were no genuine issues as to any material fact and that the moving party was entitled to judgment as a matter of law." *Scifres v. Kraft*, 916 S.W.2d 779, 781 (Ky.App.1996). Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, stipulations, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Kentucky Rules of Civil Procedure (CR) 56.03. The trial court must view the record "in a light most favorable to the party opposing the motion for summary judgment and all doubts are to be resolved in his favor." *Steelvest, Inc. v. Scansteel Service Center, Inc.*, 807 S.W.2d 476, 480 (Ky.1991). Thus, summary judgment is proper only "where the movant shows that the adverse party could not prevail under any circumstances." *Id.*

However, "a party opposing a properly supported summary judgment motion cannot defeat that motion without presenting at least some affirmative evidence demonstrating that there is a genuine issue of material fact requiring trial." *Hubble v. Johnson*, 841 S.W.2d 169, 171 (Ky.1992), citing *Steelvest, supra. See also O'Bryan v. Cave*, 202 S.W.3d 585, 587 (Ky.2006); and *Hallahan v. The Courier–Journal*, 138 S.W.3d 699, 705 (Ky.App.2004). Since summary judgment involves only legal questions and the existence of any disputed material issues of fact, an appellate court need not defer to the trial court's decision and will review the issue *de novo. Lewis v. B & R Corporation*, 56 S.W.3d 432, 436 (Ky.App.2001).

The trial court's grant of summary judgment was premised upon three grounds:

1) the doctrine of election of remedies, 2) the Appellees' entitlement to official immunity and qualified immunity, and 3) Burton's failure to establish a claim upon which relief could be granted. On appeal, Burton has failed to address the trial court's judgment wherein it concluded that the Appellees were entitled to official and qualified immunity; therefore, we decline to conduct an independent review of this conclusion of the trial court and, accordingly, affirm the grant of summary judgment upon these grounds. *See Milby v. Mears*, 580 S.W.2d 724, 727 (Ky.App.1979).

Next, we turn to the trial court's conclusion that the Appellees were entitled to summary judgment based on the doctrine of election of remedies. In the case sub judice, Burton filed a complaint with the Kentucky Commission on Human Rights, alleging that she had been sexually harassed during her employment. KCHR dismissed the complaint on March 20, 2008, based on a finding of no probable cause. Instead of seeking redress of that finding by the KCHR, on November 3, 2008, Burton filed her complaint with the trial court, alleging hostile work environment, sexual harassment, constructive discharge, and intentional infliction of emotional distress against the Appellees. We agree with the trial court that Burton's claim before the court was barred by the doctrine of election of remedies. KRS 344.270 states:

The provisions of KRS 13B.140 notwithstanding, commission shall not take jurisdiction over any claim of an unlawful practice under this chapter while a claim of the same person seeking relief for the same grievance under KRS 344.450 is pending. A state court shall not take jurisdiction over any claim of an unlawful practice under this chapter while a claim of the same person seeking relief for the same grievance is pending before

the commission. A final determination by a state court or a final order of the commission of a claim alleging an unlawful practice under KRS 344.450 shall exclude any other administrative action or proceeding brought in accordance with KRS Chapter 13B by the same person based on the same grievance.

Moreover, in *Vaezkoroni v. Domino's Pizza, Inc.*, 914 S.W.2d 341 (Ky.1995), our Kentucky Supreme Court determined that a finding of "No Probable Cause" by a county human rights commission barred a subsequent employment discrimination claim under KRS Chapter 344 in circuit court, and noted:

It is well settled that "[t]he Act provides alternative sources of relief, one administrative and one judicial." *Meyers v. Chapman Printing Co.*, Ky., 840 S.W.2d 814, 820 (1992). Given this reasoning, it is absurd to assume that an individual could in fact have the opportunity to choose between local or state administrative remedies and then still have the option of judicial relief.

*Vaezkoroni* at 342.

In the case sub judice, Burton sought relief for the alleged violation of her civil rights from the KCHR and obtained a final determination from KCHR, which she did not contest. Thereafter, Burton filed another claim with the circuit court seeking relief based on the same grievance. As elucidated by *Vaezkoroni* and as set out in KRS 344.270, Burton's subsequent litigation in circuit court was barred. The trial court correctly determined that the Appellees were entitled to summary judgment based upon the doctrine of election of remedies. Accordingly, we affirm the grant of summary judgment upon this ground.

■ Last, we address the trial court's grant of summary judgment to the Appellees and against Burton for failure to establish a claim for sexual harassment and hostile work environment, or IIED.[10] In *Ammerman v. Board of Educ. of Nicholas County*, 30 S.W.3d 793 (Ky.2000), the Kentucky Supreme Court addressed sexual harassment and hostile work environment:

In 1986, the United States Supreme Court decided the watershed case of *Meritor Saving [Savings] Bank v. Vinson* [477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986)], which held that a sexual harassment claim can be brought based upon a hostile or abusive work environment. For sexual harassment to be actionable under the *Meritor* standard, it must be sufficiently severe or pervasive so as to alter the conditions of the plaintiff's employment and create an abusive working environment. In other words, hostile environment discrimination exists "when the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Moreover, the "incidents must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." As stated by the United States Supreme Court in *Harris v. Forklift Systems* [510 U.S. 17, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)], the harassment must also be both objectively and subjectively offensive as determined by "looking at all the circumstances." These circumstances may include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utter-

---

10. Burton does not specifically address her claim of constructive discharge; thus, we de-

cline to address it. *See Milby v. Mears*, 580 S.W.2d 724, 727 (Ky.App.1979).

ance; and whether it unreasonably interferes with an employee's work performance."

*Ammerman* at 798 (internal citations omitted).

In light of *Ammerman,* we agree with the trial court that Burton failed to establish claims for sexual harassment and hostile work environment. While Burton's treatment at the Kentucky State Police Academy may have been different from what would be expected in the private-sector work environment, it was not severe or pervasive enough to satisfy the standards articulated by *Ammerman.* Thus, the trial court correctly determined that Burton had failed to establish a claim for sexual harassment and hostile work environment.

■ We also agree that Burton failed to establish a claim for IIED. This Court, in *Wilson v. Lowe's Home Center,* 75 S.W.3d 229 (Ky.App.2001), addressed the tort of IIED and noted:

> The tort of IIED was first recognized by the Kentucky Supreme Court when it adopted the Restatement (Second) of Torts, § 46 in *Craft v. Rice,* Ky., 671 S.W.2d 247, 251 (1984). The court adopted the following:
>
> § 46. Outrageous Conduct Causing Severe Emotional Distress
>
> (1) One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.

*Id.* In *Kroger Co. v. Willgruber,* Ky., 920 S.W.2d 61 (1996), the Kentucky Supreme Court stated that "[c]itizens in our society are expected to withstand petty insults, unkind words and minor indignities. Such irritations are a part

of normal, every day [sic] life and constitute no legal cause of action. It is only outrageous and intolerable conduct which is covered by this tort." *Id.* at 65. *Wilson* at 237.

In the case sub judice, the facts alleged by Burton during her brief time at the KSP Academy could be considered impolite and discourteous; however, they simply did not arise to the level of outrageous conduct required by *Wilson.* Accordingly, the trial court did not err in granting summary judgment on this issue.

In light of the foregoing, we affirm the grant of summary judgment to the Appellees.

ALL CONCUR.