RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 12a0137p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

GUILLERMO HERRERA,

        *Plaintiff-Appellant,*

    *v.*

No. 10-5421

CHURCHILL MCGEE, LLC, NATHAN
CHURCHILL, and PATRICK MCGEE,

        *Defendants-Appellees.*

Appeal from the United States District Court
for the Eastern District of Kentucky at Lexington.
No. 09-00072—Karl S. Forester, District Judge.

Argued: July 21, 2011

Decided and Filed: May 16, 2012

Before: MOORE and KETHLEDGE, Circuit Judges; MARBLEY, District Judge.[*]

_____

## COUNSEL

**ARGUED:** Michael J. O'Hara, O'HARA, RUBERG, TAYLOR, SLOAN & SERGENT, Covington, Kentucky, for Appellant. Mason L. Miller, MILLER WELLS, PLLC, Lexington, Kentucky, for Appellees. **ON BRIEF:** Michael J. O'Hara, Roula Allouch, O'HARA, RUBERG, TAYLOR, SLOAN & SERGENT, Covington, Kentucky, Cori Hash, KENTUCKY EQUAL JUSTICE CENTER, Lexington, Kentucky, for Appellant. Mason L. Miller, Will E. Messer, MILLER WELLS, PLLC, Lexington, Kentucky, for Appellees.

---

[*] The Honorable Algenon L. Marbley, United States District Judge for the Southern District of Ohio, sitting by designation.

1

———————————

**OPINION**

———————————

KAREN NELSON MOORE, Circuit Judge.  Guillermo Herrera filed this lawsuit against his former employer, Churchill McGee, LLC, and its two owners (collectively, "Churchill McGee"), alleging discrimination and retaliation under state and federal law. The district court dismissed Herrera's claims on the ground that Herrera had previously filed an administrative complaint alleging discrimination with a county human rights commission, and the commission found no probable cause to believe that any violation of state anti-discrimination laws had occurred.  The district court ruled that the administrative decision had the effect of barring Herrera's state-law claims under election-of-remedies principles and his federal-law claims under the doctrine of administrative preclusion.  We AFFIRM the dismissal of Herrera's state-law claims and federal-law discrimination claim.  Because the county agency did not adjudicate Herrera's federal retaliation claim, however, we REVERSE the grant of summary judgment as to Herrera's federal retaliation claim.

## I.  BACKGROUND

Guillermo Herrera was hired by the Churchill McGee construction company in June 2003 and worked as a laborer until he was fired on March 24, 2008.  In Herrera's termination letter, Patrick McGee stated that Herrera was being fired "due to unsatisfactory attendance and incarceration in jail following conviction of a misdemeanor or felony by a court of competent jurisdiction, which results in missing at least five (5) days work."  R.25-3 (Termination Letter).  After his termination, Herrera filed a complaint with the Lexington-Fayette Urban County Human Rights Commission ("Fayette HRC" or "HRC") on April 4, 2008, in which he alleged that Churchill McGee both garnished his wages improperly and fired him on account of his race and national origin.  Herrera is a Cuban of African ancestry and he alleged that white, non-Cuban employees of Churchill McGee received more favorable treatment.

On July 21, 2008, Emily Williams, an investigator with the Fayette HRC, sent Herrera a letter in which she said that she had completed her investigation and "found insufficient evidence to support [his] allegations." R.10-3 at 1 (July 21, 2008 Letter). Specifically, she found that

> Churchill McGee, LLC has treated other employees in the same or similar manner with regards to terminations, cell phone bill charges, and absences. The investigation reveals that they have . . . terminated black, white, and Latino employees for the same or similar reasons that you were terminated.

*Id.* She stated that her findings were not a final decision on Herrera's claims and that he could provide more information to her if he wished:

> If you have any additional information you would like me to consider, please contact me within the next five (5) days. If I do not hear from you, I will submit my recommendation to the Executive Director for his review and he will make the final determination with regards to your charge.

*Id.* Finally, she advised Herrera to speak with his "own legal counsel" if he had any questions "regarding the procedures or information in this letter." *Id.* at 2.

Herrera did go to see Williams within the next five days, but she told him that the decision was already in the hands of the Executive Director of the Fayette HRC. Williams then took Herrera to speak with HRC Executive Director William Wharton, who told Herrera that he would review Williams's investigation and issue a decision. Wharton also advised Herrera that Herrera's only option available at that time would be to speak with an attorney about carrying his case forward.

On July 31, 2008, the Executive Director issued his decision, in which he dismissed Herrera's complaint for the following reason:

> Based upon the investigation conducted, we are unable to conclude that the information obtained establishes violation(s) of the statutes. This does not certify that the Respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

R.10-4 (Fayette HRC Dismissal).  This decision also notified Herrera of his right to apply for reconsideration, and it stated that if Herrera did not seek reconsideration within twenty days, "an Order of Dismissal shall be issued."  *Id.*  Herrera did not seek reconsideration, and twenty-one days later, an Order of Dismissal was entered, in which the Executive Director noted that no probable cause had been found.  At the bottom of the Order is a paragraph giving Herrera notice of some of the implications of the Order.  In particular, it states that, "This is a notice that if the Charging Party so chooses to pursue this matter further by filing a private court action, the Commission requests that you send a copy of the Court complaint to this office within ten (10) days of filing.  The file will then be preserved."  R.10-5 (Order of Dismissal).

On March 4, 2009, Herrera filed this complaint against Churchill McGee and its owners, Nathan Churchill and Patrick McGee.  The complaint lists seven counts against the defendants, only the first two of which are relevant to this appeal.  Both counts are for discrimination and retaliation, but Count One is based on 42 U.S.C. § 1981, and Count Two is based on the Kentucky Civil Rights Act ("KCRA"), KY. REV. STAT. ANN. § 344.450.[1]

Churchill McGee filed a motion for partial judgment on the pleadings in July 2009, seeking dismissal of Count Two.  The district court granted the motion and dismissed this count on October 26, 2009, on the ground that the KCRA claim in Count Two was barred by the KCRA's election-of-remedies provision, KY. REV. STAT. ANN. § 344.270.  Section 344.270 provides, in full, as follows:

> The provisions of KRS 13B.140 notwithstanding, commission shall not take jurisdiction over any claim of an unlawful practice under this chapter while a claim of the same person seeking relief for the same grievance under KRS 344.450 is pending.  A state court shall not take jurisdiction over any claim of an unlawful practice under this chapter while a claim of the same person seeking relief for the same grievance is pending before the commission.  A final determination by a state court or a final order of the commission of a claim alleging an unlawful

---

[1]Section 344.450 provides, in relevant part:  "Any person injured by any act in violation of the provisions of this chapter shall have a civil cause of action in Circuit Court to enjoin further violations, and to recover the actual damages sustained, together with the costs of the law suit."

> practice under KRS 344.450 shall exclude any other administrative action or proceeding brought in accordance with KRS Chapter 13B by the same person based on the same grievance.

KY. REV. STAT. ANN. § 344.270. Because his complaint with the Fayette HRC was not pending at the time Herrera brought this suit, only the final sentence of § 344.270 is relevant. According to the district court, § 344.270 bars individuals from bringing a civil-rights lawsuit after unsuccessfully seeking relief on the same claims from an administrative civil-rights commission in Kentucky, meaning that Herrera's unsuccessful complaint with the Fayette HRC barred him from bringing the KCRA claim in Count Two.

A few months later, in March 2010, the parties filed cross-motions for summary judgment. The district court granted Churchill McGee's motion on April 13, 2010, and dismissed the case. The court dismissed Count One for reasons somewhat similar to Count Two; it held that the doctrine of administrative preclusion barred relitigation of the federal § 1981 discrimination and retaliation claims because the Fayette HRC had already considered and rejected Herrera's administrative complaint, which was based on essentially the same claims. Herrera filed a timely notice of appeal from the district court's orders on the motions for partial judgment on the pleadings and summary judgment.

## II. ANALYSIS

We review de novo a district court's grant of both judgment on the pleadings and summary judgment. *Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235, 240 (6th Cir. 2011); *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011).

**A. Herrera's Kentucky Civil Rights Act Claim**

Herrera contends that the district court erred in holding that Kentucky Revised Statute § 344.270 barred him from bringing his KCRA claim under § 344.450, arguing that the Order of Dismissal from the Fayette HRC was not a final order.

In interpreting state law, "we apply the law of the state's highest court," and when the state's highest court has not ruled on an issue, we "must ascertain the state law from all relevant data, including the state's intermediate court decisions." *Ellis ex rel. Pendergrass v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 697–98 (6th Cir. 2006) (internal quotation marks omitted). Intermediate appellate decisions "are accorded weight, although a federal court is not bound by lower court determinations if convinced by other data that the state's highest court would determine otherwise." *Bailey v. V & O Press Co.*, 770 F.2d 601, 604 (6th Cir. 1985).

Kentucky courts have consistently treated Orders of Dismissal based on lack of probable cause as final orders that trigger the election-of-remedies bar of § 344.270. *See Vaezkoroni v. Domino's Pizza, Inc.*, 914 S.W.2d 341, 341–42 (Ky. 1995); *Burton v. Ky. State Police*, 341 S.W.3d 589, 592–93 (Ky. Ct. App. 2011); *Grisby v. UPS Ground Freight, Inc.*, No. 2007-CA-002401-MR, 2009 WL 1636293, at *1, 4–5 (Ky. Ct. App. June 12, 2009); *accord Young v. Sabbatine*, No. 97-5169, 1998 WL 136559, at *1, 4 (6th Cir. Mar. 19, 1998) (unpublished opinion). In *Vaezkoroni*, *Burton*, and *Grisby*, the plaintiffs were barred from bringing KCRA claims in court after their complaints with the state or county human rights commission were dismissed based on a finding of "no probable cause."

In *Vaezkoroni*, the Supreme Court of Kentucky described as "well settled" the notion that the KCRA "'provides alternative sources of relief, one administrative and one judicial.'" 914 S.W.2d at 342 (quoting *Meyers v. Chapman Printing Co.*, 840 S.W.2d 814, 820 (Ky. 1992)). Moreover, the court stated that it would be "absurd" to assume that an individual could pursue a charge with the state or local commission and then, if that was unsuccessful, file a separate lawsuit in the courts. *Id.* In addition, the court held that a decision by a local commission, such as the Fayette HRC, should have

the same preclusive effect as a decision by the Kentucky Commission on Human Rights. *Id.* A contrary holding, "[t]aken to its logical extreme, . . . would offer an individual the option of proceeding before a local commission, then before the circuit court and finally before the Ky. Commission. This is not the case." *Id.*

Herrera has not provided any caselaw to the contrary. He correctly notes that subsequent cases have narrowed the holding in *Vaezkoroni*, but only by identifying as dicta the language in that opinion suggesting that the mere *filing* of a complaint with the human rights commission would bar a subsequent KCRA suit on election-of-remedies ground. *See Brown v. Diversified Decorative Plastics, LLC*, 103 S.W.3d 108, 110–13 (Ky. Ct. App. 2003) (en banc). These cases clarify that § 344.270 does not bar an individual who files a complaint with a human rights commission, but later withdraws that complaint before the commission issues a final order, from filing suit under the KCRA in court. *Id.*; *Wilson v. Lowe's Home Ctr.*, 75 S.W.3d 229, 236 (Ky. Ct. App. 2001). Because Herrera did not withdraw his HRC complaint prior to the issuance of the Order of Dismissal, *Brown* and *Wilson* have no bearing on this case.[2]

Although neither party raised the issue, we note that the statutory language is now somewhat ambiguous as to whether a final order of a human rights commission will bar subsequent judicial proceedings or just further administrative proceedings. The election-of-remedies provision states that:

> A final determination by a state court or a final order of the commission of a claim alleging an unlawful practice under KRS 344.450 shall exclude any other administrative action or proceeding brought in accordance with KRS Chapter 13B by the same person based on the same grievance.

---

[2]Herrera also points to *Clifton v. Midway College*, 702 S.W.2d 835 (Ky. 1985), but that case is likewise inapposite. The *Clifton* court expressed sympathy for the plaintiff, whose complaint had been traded back and forth between the Kentucky Human Rights Commission and the federal EEOC, as "the victim of a bureaucratic shuffle without the benefit of any kind of evidentiary hearing on the merits of her charges," but the decision that election of remedies did not bar her KCRA suit hinged on the fact that the state agency "[n]ever issued any order relating to the claim of discrimination." *Id.* at 837; *see also Brown*, 103 S.W.3d at 114 (describing *Clifton*). Herrera argues that an Order of Dismissal is not a final order for § 344.270 purposes, but, as described above, Kentucky courts have consistently held that it is.

KY. REV. STAT. ANN. § 344.270.[3] Prior to 1996, by contrast, the provision read:

> A final determination by a state court or the commission of a claim alleging an unlawful practice under KRS 344.450 shall exclude any other action or proceeding brought by the same person based on the same grievance.

KY. REV. STAT. ANN. § 344.270 (1984), *amended by* KY. REV. STAT. ANN. § 344.270 (1996).

The Supreme Court of Kentucky has not interpreted § 344.270 since the 1996 amendment; the last case that court decided involving § 344.270 was *Vaezkoroni* in 1995. As described above, it appears that post-1996 decisions of the Kentucky intermediate appellate courts have consistently applied the rule that a final order from a human rights commission bars subsequent judicial proceedings based on the same grievance. *Burton*, 341 S.W.3d at 592–93; *Grisby*, 2009 WL 1636293, at *4–5; *see also McKissic v. Commonwealth of Ky. Transp. Cabinet*, 334 S.W.3d 885, 890 (Ky. Ct. App. 2010) (KCRA suit barred after plaintiff raised the same claims in proceedings before the state Personnel Board).[4]

We therefore view these intermediate-appellate-court cases as "relevant data" in predicting how the Supreme Court of Kentucky would rule on the issue of whether this suit is barred. *Ellis*, 455 F.3d at 697–98. We believe that the Supreme Court of Kentucky would hold that, where an individual receives an Order of Dismissal from a civil rights commission—whether state or local—and the individual does not seek further relief in the manner prescribed by the commission, but rather files a KCRA lawsuit in court based on the same claim, the election-of-remedies doctrine bars the subsequent lawsuit. We therefore affirm the district court's grant of partial judgment on the pleadings with respect to Count Two, the KCRA claim.[5]

---

[3]KRS Chapter 13B governs administrative hearings. *See* KY. REV. STAT. ANN. § 13B.005 et seq.

[4]The Supreme Court of Kentucky denied discretionary review in *Grisby* and *McKissic*.

[5]Although it does not affect our conclusion, we note that the Order of Dismissal's reference to a subsequent private court action, *see* R.10-5 ("[I]f the Charging Party so chooses to pursue this matter further by filing a private court action, the Commission requests that you send a copy of the Court

**B. Herrera's § 1981 Claims**

Herrera next argues that the district court erroneously applied administrative preclusion to dismiss Count One, his federal claims under § 1981. As an initial matter, he contends that Churchill McGee waived the affirmative defense of administrative preclusion by failing to raise it in a timely manner before the district court. Alternatively, Herrera argues that the requirements for administrative preclusion were not met as to his race-discrimination claim and that preclusion does not apply to his retaliation claim because he did not present that claim to the Fayette HRC.

**1. Waiver**

Herrera first argues that Churchill McGee waived the affirmative defense of administrative preclusion because it first raised that defense in its response to Herrera's motion for summary judgment, which was filed after the close of discovery. Herrera contends that he suffered prejudice from this delay by losing out on the opportunity to conduct discovery on the HRC's investigation and by being forced to address the issue within the limits of a reply brief.

Herrera is incorrect. Churchill McGee raised the affirmative defense of collateral estoppel in its Answer. *See* R.3 at 5, ¶ 38 ("Herrera's claims are barred by the doctrines of res judicata, collateral estoppel, detrimental reliance, waiver, and estoppel."). Moreover, Herrera has not shown any prejudice from Churchill McGee's decision to address the defense in its response brief. *See Smith v. Sushka*, 117 F.3d 965, 969 (6th Cir. 1997) (holding that the defendant's failure to plead an affirmative defense did not constitute waiver when the failure "did not result in surprise or unfair prejudice to [the plaintiff]"). Herrera was on notice that Churchill McGee considered the HRC proceedings relevant to its defense, because Churchill McGee had already successfully argued that the HRC's Order of Dismissal barred Herrera's KCRA claim on election-of-remedies grounds. With this notice, Herrera could have conducted any necessary

complaint to this office within ten (10) days of filing."), strikes us as unnecessarily confusing, especially for a pro se complainant. If that sentence is meant to refer to seeking judicial review of the agency's decision, as the district court characterized it, it could certainly do so more clearly.

discovery regarding the HRC proceedings prior to the close of discovery and the deadline for filing dispositive motions.  In addition, Herrera had an opportunity fully to brief the preclusion issue on appeal.**6**  Accordingly, under these circumstances, Churchill McGee did not waive its preclusion defense.

### 2.  Herrera's Race-Discrimination Claim

State administrative decisions are given preclusive effect with respect to issues later raised in a federal-court lawsuit "'[w]hen an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate.'"  *Univ. of Tenn. v. Elliott*, 478 U.S. 788, 797–98 (1986) (quoting *United States v. Utah Constr. & Mining Co.*, 384 U.S. 394, 421–22 (1966)).   In such circumstances, "federal courts must give the agency's factfinding the same preclusive effect to which it would be entitled in the State's courts." *Id.* at 799; *see also Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1046 (6th Cir. 2001) ("[F]ederal courts must give the factual findings of a state agency that is acting in a judicial capacity preclusive effect if such findings would have preclusive effect in the State's courts.").   Administrative preclusion "is favored as a matter of general policy," but "its suitability may vary according to . . . the relative adequacy of agency procedures." *Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 109–10 (1991). Herrera argues both that the Fayette HRC was not acting "in a judicial capacity" and that he did not have "an adequate opportunity to litigate" his discrimination claim.

At the outset, we note that "[i]t is difficult to state a general formula to capture the essential elements of adjudicatory procedure that may entitle administrative decisions to preclusion effects in subsequent judicial proceedings."  18B WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE § 4475, at 483 (2d ed. 2002).  Likewise, a full and fair opportunity to litigate does not require any "single model of procedural fairness, let

---

**6**Because we find no unfair prejudice, we need not address the sufficiency under Federal Rule of Civil Procedure 8(c) of Churchill McGee's rather barebones pleading of the affirmative defense of preclusion.  We therefore have no occasion to address, and express no view regarding, the impact of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)*,* and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), on affirmative defenses.

alone a particular form of procedure." *Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 483 (1982). After examining the particular circumstances of this case, we agree with Churchill McGee that the requirements of *Elliott* have been met.

We have held that "[a]n administrative board acts in a judicial capacity when it hears evidence, gives the parties an opportunity to brief and argue their versions of the facts, and the parties are given an opportunity to seek court review of any adverse findings." *Nelson v. Jefferson County*, 863 F.2d 18, 19 (6th Cir. 1988). As described in more detail below, Herrera had the opportunity to present evidence and could seek judicial review of the administrative decision. Although the Fayette HRC does not appear to have requested formal briefing, Herrera had the opportunity to present his charges against Churchill McGee and to communicate with the HRC investigator throughout the process.

We also take some guidance on this issue from *Kremer*, in which the Supreme Court considered a Title VII employment-discrimination suit brought after the plaintiff had sought relief with the New York State Division of Human Rights ("NYHRD"). 456 U.S. at 463–64. Without conducting a hearing, the NYHRD issued a no-probable-cause finding, which was affirmed first in an administrative appeal and again by an intermediate appellate court. *Id.* at 464. Kremer could have obtained—but did not seek—review by the New York Court of Appeals. *Id.*

Considering the NYHRD procedures for discrimination claims, the Supreme Court rejected Kremer's argument "that the New York administrative and judicial proceedings in this case were so deficient that they are not entitled to preclusive effect in federal courts." *Id.* at 467. In New York:

> Before th[e] determination of probable cause is made, the claimant is entitled to a full opportunity to present on the record, though informally, his charges against his employer or other respondent, including the right to submit all exhibits which he wishes to present and testimony of witnesses in addition to his own testimony. The complainant also is entitled to an opportunity to rebut evidence submitted by or obtained from the respondent. He may have an attorney assist him and may ask the division to issue subpoenas.

*Id.* at 483 (internal quotation marks and citations omitted). In the end, the Court had "no hesitation in concluding that this panoply of procedures, complemented by administrative as well as judicial review" provided the complainant with a full and fair opportunity to litigate his discrimination claims. *Id.* at 484.[7]

In Kentucky, a complainant presents his or her charges against the employer to the Fayette HRC in "[a] short, plain and concise statement." R.27-11 at 5 (Fayette HRC Rules, § 2.010). Next, "the Respondent shall file with the Commission a verified statement of position or evidence with respect to each and every allegation of the complaint." *Id.* at 6 (*Id.* § 2.020). The HRC investigator is then required to "make a prompt and thorough investigation of the allegations of the Complaint." *Id.* at 7 (*Id.* § 2.030).

A Fayette HRC investigator has the authority to require all parties to attend a Fact-Finding Conference, "for the purposes of: 1. Identifying the issues in dispute; 2. Ascertaining the positions of the parties; 3. Resolving those issues that can be resolved; 4. Obtaining evidence; and 5. Determining the likelihood of a predetermination settlement." *Id.* Further, the investigator can "request access to premises, records, and documents relevant to investigation of the Complaint," and, if that request is denied, can obtain a subpoena. *Id.* The investigator can also interview witnesses outside of a formal Fact-Finding Conference.

If the HRC determines after an investigation that no probable cause exists to support the claim of discrimination, it will dismiss the complaint. Beyond the investigation and probable-cause determination, HRC procedures allow for an unsuccessful complainant to request reconsideration by the HRC's Executive Director and to seek review by the Kentucky courts. *See id.* at 12–13 (Fayette HRC Rules,

---

[7]We note that *Kremer* is not directly on point because the NYHRD's no-probable-cause finding was reviewed and affirmed in state court. *See Kosakow v. New Rochelle Radiology Assocs., P.C.*, 274 F.3d 706, 727–28 (2d Cir. 2001) (emphasizing this element of *Kremer* and distinguishing it from cases involving the preclusive effect of unreviewed administrative decisions). In such circumstances, the source of any preclusive effect is the Full Faith and Credit statute, 28 U.S.C. § 1738. *Kremer*, 456 U.S. at 466–68, 481–82. The preclusive effect of unreviewed administrative decisions, by contrast, stems from common-law preclusion principles. *Elliott*, 478 U.S. at 796–97. Nonetheless, much of the Court's analysis in *Kremer* focused on the adequacy of the administrative procedures.

§§ 2.050(I), 2.060); KY. REV. STAT. ANN. § 344.240.  Upon reconsideration by the Executive Director, the complainant can introduce new evidence.  R.27-11 at 12–13 (Fayette HRC Rules, § 2.050(I)).

Based on the available procedures, the HRC rules appear to have provided Herrera with a similar ability to present his claims and any supporting evidence as Kremer had in New York.  As in *Kremer*, Herrera had an "opportunity to present on the record, though informally, his charges against his employer."  456 U.S. at 483.  Herrera could submit evidence in support of his claim and, because the Fayette HRC rules do not contain a deadline for the submission of evidence, seemingly could have responded to any evidence submitted by or obtained from Churchill McGee with additional evidence of his own.  The Fayette HRC can obtain subpoenas, though it is not clear whether Herrera could have asked the investigator to do so.  Herrera could seek assistance from an attorney.  Administrative reconsideration and judicial review are available.

Indeed, in Herrera's case, the Fayette HRC investigator informed him multiple times that he could submit evidence in support of his claims.  The investigator also interviewed one of Herrera's former co-workers at Herrera's request.  Insofar as Herrera complains about not being able to present additional evidence to the investigator (even though the investigator's July 21, 2008, letter stated that she would accept more evidence), Herrera could have argued this point on reconsideration or before a court on appellate review of the HRC's decision.  Both the investigator and the Executive Director advised Herrera that he might wish to consult an attorney.

Herrera makes much of the fact that the Fayette HRC did not hold a hearing before dismissing his complaint for lack of probable cause.  Although many of the administrative-preclusion cases Herrera cites involved a formal hearing before the agency, we have never held that such a hearing is a precondition to administrative preclusion.  Under the Fayette HRC rules, the agency will hold a hearing only after it has determined that probable cause supports the complainant's claim of discrimination.  R.27-11 at 18 (Fayette HRC Rules, § 2.100).  If administrative preclusion applied only to lawsuits filed by those individuals who had a hearing before the Fayette HRC, then

some individuals who brought claims to the HRC would be precluded from filing a subsequent lawsuit in federal court, but others would not, depending upon the outcome of the administrative proceeding. Moreover, Herrera's position would lead to the dubious result that a complainant with a weaker case (i.e., whose claim was dismissed without a hearing for lack of probable cause) would be in a more favorable position with respect to preclusion than a complainant with a stronger case (i.e., whose claim was supported by probable cause and thus merited a hearing).

In addition, the Fayette HRC's purpose is to resolve discrimination claims, the same purpose served by a § 1981 suit in federal court. We have declined to apply administrative preclusion when the agency proceedings served a more limited purpose than the subsequent lawsuit. In *Hicks v. Floyd County Board of Education*, for example, we held that a decision by a state unemployment insurance commission that the employer had unfairly forced the employee to leave did not bar a subsequent sex-discrimination lawsuit under § 1983. 99 F. App'x 603, 604–05 (6th Cir. 2004) (unpublished opinion). Affording preclusive effect to such determinations would undermine the purposes of unemployment-compensation hearings; the heightened stakes could "turn[] an unemployment hearing into a forum for thorough exploration of [discrimination] issues" and thus "defeat the purpose of providing fast, cheap resolution of unemployment claims." *Id.* at 605 (citing *Berrier v. Bizer*, 57 S.W.3d 271, 281 (Ky. 2001)). No such risk exists in the Fayette HRC context, because both parties already have an incentive to pursue the central issue—employment discrimination—vigorously.

Although it is somewhat of a close call, we are ultimately convinced that the Fayette HRC was acting "in a judicial capacity" and that "the parties have had an adequate opportunity to litigate" the issues contained in Herrera's § 1981 race-discrimination claim. *Elliott*, 478 U.S. at 797–98 (quoting *Utah Constr. & Mining Co.*, 384 U.S. at 421–22). The fact that the HRC's Order of Dismissal for lack of probable cause received neither administrative reconsideration nor judicial review does not change this conclusion, because both options were available. Herrera's "fail[ure] to avail himself of the full procedures provided by state law does not constitute a sign of

their inadequacy." *Kremer*, 456 U.S. at 485; *see also Chapman v. Farris*, No. 2002-CA-000573-MR, 2004 WL 1367117, at *3 (Ky. Ct. App. June 18, 2004) ("That [plaintiff] did not utilize the opportunities afforded him under KRS Chapter 13B in the administrative proceedings . . . cannot be used in his favor to relitigate the same issue in the circuit court.").

Finally, the Fayette HRC's decision would receive preclusive effect in Kentucky courts. As detailed above, a final determination from the Fayette HRC would bar a subsequent KCRA lawsuit on election-of-remedies grounds. In addition, Kentucky courts would give preclusive effect to the agency's decision on traditional issue-preclusion grounds. Kentucky courts preclude litigation of an issue in a subsequent proceeding if that same issue was actually litigated, actually decided, and necessary to the judgment in a prior proceeding. *Yeoman v. Ky. Health Policy Bd.*, 983 S.W.2d 459, 465 (Ky. 1998). As in federal court, "[d]ecisions of administrative agencies acting in a judicial capacity are entitled to the same res judicata effect as judgments of a court." *Ky. Bar Ass'n v. Harris*, 269 S.W.3d 414, 418 (Ky. 2008) (citing *Godbey v. Univ. Hosp. of the Albert B. Chandler Med. Ctr., Inc.*, 975 S.W.2d 104, 105 (Ky. Ct. App. 1998)).

Herrera's § 1981 race-discrimination claim is based on the same premise as his claim before the Fayette HRC—that he was treated differently than similarly situated employees of a different race and national origin. The issue of disparate treatment was actually litigated and actually decided by the HRC and was necessary to the HRC's determination that no probable cause existed to support Herrera's KCRA claim. The investigator found that "other employees [at Churchill McGee] have experienced the same treatment regardless of their race or national origin." R.10-3 at 1 (July 21, 2008 Letter). Accordingly, Herrera is precluded from arguing in his § 1981 suit the same issue, i.e., that he was treated less favorably in the terms and conditions of employment than similarly situated employees outside of his protected class.[8]

_____

[8] Herrera notes that his administrative complaint did not include claims against Defendants Churchill and McGee, the owners of Churchill McGee, as individuals. Kentucky courts, however, apply issue preclusion "when at least the party to be bound is the same party in the prior action." *Moore v. Commonwealth*, 954 S.W.2d 317, 319 (Ky. 1997). Because Herrera is the "party to be bound" and was a party to the HRC proceedings, Churchill and McGee can assert non-mutual issue preclusion as a defense.

Because the administrative decision here would receive preclusive effect in Kentucky courts, the final requirement of *Elliott* is satisfied. The district court was therefore correct in holding that the doctrine of administrative preclusion bars Herrera's § 1981 race-discrimination claim in Count One, and we affirm its grant of summary judgment as to that claim.

### 3. Herrera's Retaliation Claim

Herrera contends that, even if administrative preclusion bars his race-discrimination claim, his federal retaliation claim is not barred because he never presented that claim to the Fayette HRC. Churchill McGee counters that the HRC necessarily decided that no retaliation had occurred by finding that Churchill McGee fired Herrera for excessive absences and that this reason was not pretextual. However, the HRC made no such findings. The HRC concluded only that Churchill McGee did not treat Herrera differently than similarly situated white employees. Disparate treatment is one way to show pretext, but it is not the only way. *See, e.g.*, *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994). The HRC made no determination as to whether Churchill McGee's proffered reason for the termination had any basis in fact or actually motivated the discharge, for example. *See id.* The HRC did not find that Churchill McGee fired Herrera because of excessive absences, only that Churchill McGee did not fire Herrera because he is African-Cuban.

Moreover, Herrera could still maintain a retaliation claim even if his excessive absences were sufficient to support termination. We held in *Hollimon v. Shelby County Government* that the county merit review board's determination that the plaintiff had been terminated for good cause did not preclude her from bringing Title VII retaliation and discrimination claims in federal court when she had not raised those issues before the board. 325 F. App'x 406, 409–10 (6th Cir. 2009) (unpublished opinion). Even though the board concluded that Hollimon had "violated the policies and procedures of the Shelby County Government, . . . [it] did not decide whether those stated justifications were the *real* reason behind Hollimon's firing or just a facade." *Id.* at 410 (internal quotation marks and citations omitted). Issue preclusion thus did not apply, because

"[t]he board never decided one way or another whether retaliation was involved." *Id.* We reached the same conclusion in *Cockrel*, holding that issue preclusion would not bar the plaintiff's § 1983 retaliation claim "[e]ven if the appeals board had decided that the reasons proffered by the defendants for Cockrel's discharge were adequate to support the termination and that there was substantial evidence of defendants' proffered reasons in the record," because, "unless Cockrel raised her retaliation claim, it would not have decided, nor even considered, whether the true motivation of defendants' actions was to retaliate against her." 270 F.3d at 1046–47. As in *Hollimon* and *Cockrel*, the Fayette HRC simply did not consider the issue of whether Herrera's termination was an act of retaliation.

Because the HRC did not litigate or decide any issue regarding retaliation, Kentucky courts would not give preclusive effect to the HRC's no-probable-cause determination in a subsequent retaliation suit. *See Yeoman*, 983 S.W.2d at 465. The third prong for administrative preclusion under *Elliott* is not satisfied. Accordingly, the district court erred in applying administrative preclusion to dismiss Herrera's § 1981 retaliation claim.[9]

Although Churchill McGee urges us to rule in its favor on the merits of summary judgment if we disagree with the district court's preclusion holding, we decline to do so. The merits of Herrera's retaliation claim are best addressed in the first instance by the district court.

---

[9]Because Churchill McGee never argued before the district court or on appeal that Herrera's retaliation claim was barred by claim preclusion, we do not consider that possibility. Although claim preclusion is a purely legal issue that we can address sua sponte under "special circumstances," *Arizona v. California*, 530 U.S. 392, 412 (2000), we do not do so here because it would require us first to weigh in on a circuit split. The federal courts of appeals are split as to whether unreviewed state administrative decisions have claim-preclusive as well as issue-preclusive effect. *Compare Plough v. West Des Moines Cmty. Sch. Dist.*, 70 F.3d 512, 515 n.6 (8th Cir. 1995) (claim preclusion), *with Dionne v. Mayor & City Council of Baltimore,* 40 F.3d 677, 684–85 (4th Cir. 1994) (no claim preclusion) *and Gjellum v. City of Birmingham*, 829 F.2d 1056, 1064–65 & n.21 (11th Cir. 1987) (same); *see also Hitt v. Connell*, 301 F.3d 240, 247 & n.3 (5th Cir. 2002) (recognizing the circuit split and suggesting that claim preclusion is available). *Elliott* expressly addressed only the issue-preclusive effect of agency factfinding. *See Nelson*, 863 F.2d at 19 (noting that "*Elliott* dealt with issue preclusion"). Without the benefit of briefing on this matter, we decline to stake out a position in this debate.

### III.  CONCLUSION

For the reasons stated above, we affirm the district court's grant of Churchill McGee's motion for partial judgment on the pleadings as to Herrera's KCRA claim and the motion for summary judgment as to his § 1981 race-discrimination claim.  We reverse the district court's grant of summary judgment as to Herrera's § 1981 retaliation claim and remand for further proceedings consistent with this opinion.

REVERSED in part and AFFIRMED in part.